PEOPLE v PHILLIPS

Docket Nos. 174126, 174595. Submitted March 20, 1996, at Detroit. Decided July 9, 1996, at 9:05 A.M.

Arthur L. Phillips, Jr., was convicted by a jury in the Recorder's Court of Detroit, Samuel A. Turner, J., of armed robbery and possession of a firearm during the commission of a felony. The defendant's sentences for armed robbery and felony-firearm were ordered to run concurrently with the defendant's sentence for unrelated federal offenses. The theory of the defense was misidentification and alibi. The defendant contended that at the time of the robbery in Detroit he was helping to install a water heater in Fennville. Two witnesses testified that the defendant was in Fennville at the time of the crime. The prosecution was permitted to cross-examine those two witnesses concerning their failure to contact the police or the prosecution before trial. The prosecution appealed, arguing that the Michigan sentences should be consecutive to the federal sentence. The defendant appealed, raising a number of issues concerning his convictions and sentences. The appeals were consolidated.

The Court of Appeals *held*:

1. The prosecution is under no obligation to lay any special foundation before attempting to impeach an alibi witness during cross-examination concerning the failure of the witness to inform the police or the prosecution of the alibi information before trial. Evidence of the failure to make known to authorities before trial that one has alibi information may properly be considered by the trier of fact in determining the credibility of alibi testimony. Any explanation of the delay in bringing alibi information to the attention of the police or the prosecution may be brought to the attention of the trier of fact during the defense's direct or redirect examination of an alibi witness. The trial court properly permitted the prosecution to cross-examine the alibi witnesses concerning their failure to bring their alibi information to the attention of the authorities at an earlier date.

2. The prosecution was properly allowed to elicit testimony regarding the defendant's previous use of aliases, because that testimony was used to establish the defendant's identity.

3. The prosecution's comments during the closing argument that the defense counsel was trying to "confuse the issue," when considered in the context in which it was made, was nothing more than a proper comment concerning the accuracy of the defense counsel's summary of the evidence presented. The remark was not intended as a personal attack on the defense counsel and did not deny the defendant a fair trial.

4. The provisions of the Interstate Agreement on Detainers were not violated. Because the defendant was a federal parolee awaiting parole revocation, the protections of that statute did not apply. Further, the defendant was brought to trial within the statutory 120-day period after the detainer was lodged against him.

5. The prosecution is correct in its claim that the Michigan sentences should have been ordered to run consecutively to the federal sentence pursuant to MCL 768.7a(2); MSA 28.1030(1)(2), which provides that the sentence of a person convicted of a felony committed while "on parole from a sentence for a previous offense" shall run consecutively to "the expiration of the remaining portion of the term of imprisonment imposed for the previous offenses." Had the Legislature intended that this provision be applied only where the previous offense and sentence was a Michigan offense and sentence, it could have included such a limitation. Because of the absence of such limiting language, the provision applies to the defendant, a federal parolee at the time of committing the Michigan offenses. Accordingly, the Michigan sentences should have been ordered to run consecutively to the remainder of the defendant's federal sentence.

6. On remand for resentencing, the trial court must determine whether the defendant is entitled to additional sentence credit.

Conviction affirmed; case remanded for an order that the sentences be consecutive to the federal sentence and for consideration of additional sentence credit.

1. CRIMINAL LAW — WITNESSES — ALIBI WITNESSES — IMPEACHMENT.

The prosecution is under no obligation to lay any special foundation before attempting to impeach an alibi witness during cross-examination concerning the failure of the witness to inform the police or the prosecution of the alibi information before trial.

2. CRIMINAL LAW — EVIDENCE — ALIASES.

Evidence of a criminal defendant's use of an alias is admissible to establish identity.

3. PRISONS AND PRISONERS — INTERSTATE AGREEMENT ON DETAINERS — PAROLE REVOCATION.

The protections of the Interstate Agreement on Detainers do not apply to federal parolees awaiting parole revocation (MCL 780.601 *et seq.*; MSA 4.147[1] *et seq.*).

4. CRIMINAL LAW — SENTENCING — CONSECUTIVE SENTENCING STATUTE — FEDERAL PAROLEES.

The sentence of a defendant convicted of a felony committed while on parole for a federal offense must be served consecutively to the remainder of the federal sentence (MCL 768.7a[2]; MSA 28.1030[1][2]).

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *John D. O'Hair*, Prosecuting Attorney, *Timothy A. Baughman*, Chief of Research, Training, and Appeals, *Don W. Atkins*, Principal Attorney Appeals, and *Mary DuFour Morrow*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Amy Neville*), for the defendant on appeal.

Before: BANDSTRA, P.J., and MARKMAN and M. D. SCHWARTZ,* JJ.

BANDSTRA, P.J. Defendant was convicted by a jury of armed robbery, MCL 750.529; MSA 28.797, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). Defendant was sentenced to consecutive sentences of ten to twenty-five years' imprisonment for the armed robbery conviction and two years for the felony-firearm conviction, both of which were ordered to run concurrently with defendant's sentence for unrelated federal offenses. In these consolidated appeals, defendant raises a number of issues regarding his convictions, and the prosecutor argues that the sentences should have been ordered to run consecutively to defendant's

---

* Circuit judge, sitting on the Court of Appeals by assignment.

federal sentence. We remand for resentencing. The incident that gave rise to the instant charges against defendant occurred while he was on parole from sentences he was serving for federal convictions of bank robbery and kidnapping. Defendant was convicted of robbing a person tending bar in Detroit. At a photographic lineup, the victim identified defendant as the person who had committed the robbery. The victim's identification of defendant as the robber was corroborated by a bar patron. Defendant's theory was that these witnesses had misidentified him and that, when the incident occurred in September of 1992, he was employed by and staying at the home of John Fisher, a Saugatuck, Michigan, home-repair contractor. Defendant contended that, on the date of the incident, September 5, 1992, Steve Aman, an associate of Fisher, had hired defendant to help install a hot water heater in a Fennville, Michigan, home. Both Fisher and Aman testified as alibi witnesses on defendant's behalf.

Defendant argues that the prosecutor was improperly allowed to cross-examine Aman and Fisher regarding their failure to contact the police or the prosecution before trial. Defendant argues that, in the absence of any foundation testimony showing that it would have been natural for the alibi witnesses to come forward, this cross-examination was not relevant and unfairly prejudiced defendant. The prosecution responds, first, by arguing that defense counsel did not raise a relevancy objection at trial and that this issue is not properly preserved for appellate review. While the prosecutor has a good argument in this regard with respect to witness Aman, defense counsel did squarely object to the cross-examination

of witness Fisher on relevancy grounds, arguing that Fisher's failure to come forward was "immaterial." We find that because of this objection, which was overruled by the trial court, the issue is preserved for our review.

Defendant relies primarily on *People v Fuqua*, 146 Mich App 250; 379 NW2d 442 (1985). In *Fuqua*, a panel of this Court reasoned that the credibility of an alibi witness may be attacked with cross-examination and argument showing that the witness failed to come forward with the alibi account before trial, when it would have been natural to do so. The panel further reasoned that this cross-examination or argument must be based on foundational questions regarding what it would have been natural for the witness to do. *Id.* at 256. The panel noted that in a New York case, *People v Dawson*, 50 NY2d 311; 428 NYS2d 914; 406 NE2d 771 (1980), the prosecutor was allowed to attack the credibility of a defense alibi witness only after laying a foundation showing that the witness was aware of the charges against the defendant and their nature, that the witness had reason to recognize that the witness possessed exculpatory information, that the witness had a reasonable motive to exonerate the defendant, and that the witness was familiar with the means to make such information available to the police. *Id.* at 255. The *Fuqua* panel directed that upon retrial of the case before it, which was being remanded for other reasons, "[t]here must be some showing, on the record, as to why it would have been natural for the alibi witness to relate his story to the police," and that before the prosecutor would be allowed to impeach with regard to the fail-

ure to come forward issue, "an adequate foundation must be laid." *Id.* at 256.[1]

Under Supreme Court Administrative Order No. 1996-4, we are not bound by *Fuqua*, and we do not find its analysis persuasive. The concern of the New York court in *Dawson*, upon which the *Fuqua* analysis primarily relied, was that the trier of fact be provided assistance in its effort to determine whether the testimony of an alibi witness was an accurate reflection of the truth or, instead, a recent fabrication. *Dawson, supra* at 321. While we agree that the trier of fact can be assisted in this important task with information regarding the reasons that an alibi witness would have been more or less likely to come forward with alibi information before trial, we do not conclude that the prosecutor must lay any particular foundation before questioning a witness who has not come forward before trial. Presumably, if there are good reasons for a witness' failure to come forward earlier, these will be brought out during the direct examination of the alibi witness by defense counsel. On those occasions where defense counsel has not anticipated the prosecutor's cross-examination in this fashion, these reasons for failing to come forward earlier can be brought out during redirect examination.

The present case demonstrates how the trier of fact can be apprised of reasons for failing to come forward, even in the absence of any special foundation

---

[1] These admonitions were provided by the *Fuqua* panel for direction to the trial court in a case where reversal was already required for different reasons. *Fuqua* did not consider whether the prosecutor's error in improperly questioning the alibi witness would itself automatically require reversal or, instead, be subject to some sort of harmless-error analysis.

requirement. During cross-examination by the prosecutor, witness Fisher stated that he had contacted defendant to volunteer to come forward on defendant's behalf, but was told that the case would likely "get thrown out[;] . . . [i]t'll never go to court." Similarly, following cross-examination questions regarding his failure to come forward to the police or prosecutor, Fisher stated: "Well, you kind of figure a travesty like that's going to work itself out." In response to cross-examination questions implying that witness Aman should have come forward to help defendant in previous court proceedings, Aman testified that he simply "didn't know anything about" those proceedings. These explanations of the alibi witnesses' failures to come forward earlier on defendant's behalf could have been further developed by defense counsel either during direct or redirect examination. Even without any further explanation of these responses, the factfinder in this case was presented with enough information to determine whether the witnesses' failure to come forward earlier was an understandable and excusable delay and, thus, was provided assistance in deciding whether to believe their alibi accounts.

The foundational rule of *Fuqua* would take this important issue from the factfinder in many cases. Under *Fuqua*, unless an alibi witness testifies in a fashion indicating that it would have been natural to come forward earlier, a prosecutor cannot impeach that witness by reference to the failure to come forward earlier. However, a witness who would fabricate an alibi account would also likely fabricate reasons for failing to come forward earlier. The prosecutor thus would be left without a foundation for impeach-

ing the witness with respect to this issue or arguing that the witness' failure to come forward earlier suggests the alibi story was a recent fabrication. As a result, the factfinder would be left with no opportunity to consider the timeliness of the witness' account in weighing the credibility of that account.

A juror or other factfinder is certainly qualified to consider whether offered reasons for an alibi witness' delay in coming forward make sense, ring true, or are otherwise persuasive. The timeliness of an alibi account may be highly probative of its truthfulness; it may, in fact, be the best or only way to determine whether the alibi is credible. A witness should not be able to take the timeliness issue from the factfinder by fabricating "good" reasons for not coming forward earlier. We conclude that the trial court did not err in overruling defense counsel's objections to the cross-examination questions at issue.[2] The credibility of an alibi witness, regarding both the alibi account and the failure to come forward earlier with that account, should not be taken from the jury through the imposition of any special foundational requirement.[3]

---

[2] We note that there is no suggestion in the present case that the prosecutor improperly argued or implied that the alibi witnesses had a duty to come forward to tell their story earlier or that the alibi witnesses had been advised by defense counsel not to come forward earlier. See *Fuqua, supra* at 255.

[3] We do not find our result inconsistent with *People v Martinez*, 190 Mich App 442; 476 NW2d 641 (1991). Applying a manifest injustice analysis, the *Martinez* panel did not require that the prosecutor lay some special foundation before questioning an alibi witness, but only noted that the facts established the alibi witness had a relationship with defendant, knew that defendant was in police custody, and believed defendant was innocent because he was with her at the time of the crime. *Id.* at 446-447. It is not clear whether these facts were elicited upon direct examination by defense counsel or by the prosecutor upon cross-examination. Similarly, from the testimony presented by the alibi witnesses in the present case, the jury was informed that the alibi witnesses had a relationship

Defendant also argues that the prosecutor was improperly allowed to elicit testimony regarding defendant's previous use of aliases. He argues that this evidence was irrelevant and unfairly prejudicial; we review to determine whether the decision to allow this evidence constituted an abuse of discretion. *People v Bahoda*, 448 Mich 261, 289; 531 NW2d 659 (1995). Although there is a split of authority in this Court regarding whether evidence of a defendant's use of an alias can be used to impeach credibility, evidence of a defendant's use of an alias is admissible to establish identity. *People v Pointer*, 133 Mich App 313, 316; 349 NW2d 174 (1984). Testimony regarding defendant's aliases was elicited to help establish that defendant, who had been arrested in Arizona and extradited to Michigan, was in fact the same person named in the arrest warrant. There is no indication in the record that defendant was asked about his aliases because the prosecution was attempting to impeach his credibility rather than to show that the police had arrested the right person. There was no abuse of discretion in admitting this evidence.

Defendant argues that the prosecutor improperly denigrated defense counsel by arguing that defense counsel was trying to "confuse the issue." We review questions of prosecutorial misconduct case by case, considering contested remarks in context and evaluating them in light of defense arguments and their relationship to the evidence presented at trial. *People v Vaughn*, 200 Mich App 32, 39; 504 NW2d 2 (1993). The prosecutor's remarks at issue here were made

with defendant, wanted to help exonerate him, knew he was in custody for the crime, and believed he had not committed it because he was in West Michigan at the time it occurred.

during rebuttal argument and, in essence, charged that defense counsel had inaccurately summarized the evidence presented. We do not conclude that the prosecutor's remarks personally attacked defense counsel or shifted the jury's focus from the evidence to defense counsel's personality. *People v Moore*, 189 Mich App 315, 322; 472 NW2d 1 (1991) (WAHLS, P.J., concurring); *People v Dalessandro*, 165 Mich App 569, 579-580; 419 NW2d 609 (1988). We do not find that the prosecutor's remarks were improper or that they denied defendant a fair trial.

Defendant's final contention is that the Interstate Agreement on Detainers (IAD), MCL 780.601 *et seq.*; MSA 4.147(1) *et seq.*, was violated and that, accordingly, the complaint against him should have been dismissed. However, the protections of this statute do not apply to federal parolees awaiting revocation. *People v Wilden (On Rehearing)*, 197 Mich App 533, 539; 496 NW2d 801 (1992). Defendant's parole was not officially revoked until July 16, 1993. Defendant's trial commenced within 120 days of the September 30, 1993, detainer subsequently lodged against him, satisfying the provisions of Article IV (c) of the IAD. MCL 780.601(art IV[c]); MSA 4.147(1)(art IV[c]). Further, defendant was not returned to his "original place of imprisonment" before the trial arising out of that detainer was completed. MCL 780.601 (art IV[e]); MSA 4.147(1) (art IV[e]). Defendant's arguments that the Interstate Agreement on Detainers was violated are without merit.

The prosecutor argues that defendant's sentences in the present case should have been imposed to run consecutively to those imposed for defendant's federal convictions. A defendant who has been sen-

tenced in a federal court may not subsequently be sentenced to a consecutive sentence in state court in the absence of statutory authority. *In re Carey*, 372 Mich 378, 381; 126 NW2d 727 (1964). The prosecutor argues that the consecutive sentencing statute applicable in this case is MCL 768.7a(2); MSA 28.1030(1)(2), which provides:

> If a person is convicted and sentenced to a term of imprisonment for a felony committed while the person was on parole from a sentence for a previous offense, the term of imprisonment imposed for the later offense shall begin to run at the expiration of the remaining portion of the term of imprisonment imposed for the previous offense.

Because defendant was on parole from a federal sentence for a previous offense at the time he committed the instant offenses, the prosecutor argues this statute applies and a consecutive sentence was mandated.

In *People v Kirkland*, 172 Mich App 735, 736-737; 432 NW2d 422 (1988), a panel of this Court noted that the purpose of the consecutive sentencing statute is to deter persons convicted of one crime from committing other crimes by removing the security of concurrent sentencing. Accordingly, "[t]he consecutive sentencing statute should be construed liberally in order to achieve the deterrent effect intended by the Legislature." *Id.* at 737. In *Kirkland*, the argument concerned a subsection of the statute that requires consecutive sentences for "[a] person who is incarcerated in a penal or reformatory institution in this state" at the time of the sentenced offense. MCL 768.7a(1); MSA 28.1030(1)(1). The defendant argued that this language did not apply to him because he had been a federal inmate rather than a state inmate at the time

of his offense. The *Kirkland* panel rejected this argument, reasoning:

> Had the Legislature intended to restrict the statute's application only to state penal or reformatory institutions, it would have included such restrictive language on the face of the statute. [*Kirkland, supra* at 737.]

*Kirkland* is instructive for our consideration of the section of the consecutive statute at issue here. By its terms, the statute applies to persons convicted of offenses that occurred while "on parole from a sentence for a previous offense." Defendant would have us interpret this as applicable only to persons on parole for a previous state offense, but not to him because he is a federal parolee. As in *Kirkland*, however, "[h]ad the Legislature intended to restrict the statute's application only to [state parolees], it would have included such restrictive language on the face of the statute." While we agree with *Kirkland* that this statute must be liberally construed to effect its purposes, no liberal construction is required to conclude that defendant's argument is clearly contradicted by the language of the statute itself.

Defendant also argues that we should infer that the statute's provisions are limited to state, rather than federal, parolees because of the statutory requirement that a consecutive sentence shall begin to run "at the expiration of the remaining portion of the term of imprisonment imposed for the previous offense." Defendant argues that, if the statute is applied to federal parolees, this somehow requires the illegal imposition upon the federal corrections department of a state requirement that federal parole violators serve the entire maximum term of their federal sentence

before beginning serving their subsequent state sentence. No such requirement is imposed; the consecutive state sentence shall begin to run when the federal "term of imprisonment" ends, regardless of whether that term was the minimum or maximum imposed by a federal court. Defendant's sentences for the armed robbery and felony-firearm convictions should have been imposed to run consecutively to his federal sentence, and it was error to order these sentences to run concurrently.

Finally, defendant argues that if his sentences are ordered to run consecutively to his federal sentence, he is entitled to credit for the time he served while awaiting trial in the present case. It appears from the judgment of sentence that defendant was given credit for 322 days. However, because of some confusion in defendant's assertion, the trial court shall, upon remand, determine whether defendant is entitled to any additional credit.

We remand for entry of an order consistent with this opinion that provides that defendant's sentences are to run consecutively to his federal sentence. Further, the judgment of sentence should reflect appropriate credit for days served as determined by the trial court. We do not retain jurisdiction.