*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
May 9, 2019

Plaintiff-Appellee,

v

No. 341614
Berrien Circuit Court
LC No. 2017-001783-FH

WILLIAM EDWARD SCHOLTES,

Defendant-Appellant.

Before: BOONSTRA, P.J., and METER and FORT HOOD, JJ.

PER CURIAM.

Defendant, William Edward Scholtes, appeals as of right his jury trial convictions of unlawful imprisonment, MCL 750.349b, aggravated domestic violence, MCL 750.81a, and felonious assault, MCL 750.82. Defendant was sentenced to concurrent terms of 43 to 180 months' imprisonment for his unlawful imprisonment conviction, 64 days in jail for his aggravated domestic violence conviction, and 150 days in jail for his felonious assault conviction. We affirm.

## I. MOTION TO AMEND WITNESS LIST

Defendant argues that the trial court erred in denying his motion to amend his witness list to add his uncle, William White, as an alibi witness several days before trial. We disagree.

We review for an abuse of discretion the trial court's decision to disallow alibi witness testimony at trial because the defendant did not provide timely notice. See *People v Travis*, 443 Mich 668, 679-680; 505 NW2d 563 (1993) (recognizing that the alibi notice statute preserves the trial court's "discretion to fix the timeliness of notice in view of the circumstances."). When the trial court chooses an outcome that falls outside the range of reasonable and principled outcomes, this will result in an abuse of discretion. *People v Yost*, 278 Mich App 341, 353; 749 NW2d 753 (2008). In *Yost*, this Court observed that while a defendant has a constitutional right to present a defense and call witnesses in his favor at trial, this right will yield to rules of evidence and criminal procedure intended to maintain fairness during the truth-seeking function of a criminal trial. *Id*. at 379. At issue here is whether the trial court abused its discretion in declining to allow defendant to call White to testify concerning defendant's alibi.

MCL 768.20 provides, in pertinent part:

> (1) If a defendant in a felony case proposes to offer in his defense testimony to establish an alibi at the time of the alleged offense, the defendant shall at the time of arraignment on the information or within 15 days after that arraignment but not less than 10 days before the trial of the case, *or at such other time as the court directs*, file and serve upon the prosecuting attorney a notice in writing of his intention to claim that defense. The notice shall contain, as particularly as is known to the defendant or the defendant's attorney, the names of witnesses to be called in behalf of the defendant to establish that defense. The defendant's notice shall include specific information as to the place at which the accused claims to have been at the time of the alleged offense.

> (2) Within 10 days after the receipt of the defendant's notice but not later than 5 days before the trial of the case, *or at such other time as the court may direct*, the prosecuting attorney shall file and serve upon the defendant a notice of rebuttal which shall contain, as particularly as is known to the prosecuting attorney, the names of the witnesses whom the prosecuting attorney proposes to call in rebuttal to controvert the defendant's defense at the trial of the case. [Emphasis added.]

In the event that a defendant fails to timely file an alibi notice, MCL 768.21 sets forth the sanctions available to the trial court, and provides, in pertinent part:

> (1) If the defendant fails to file and serve the written notice prescribed in [MCL 768.20 or MCL 768.20a], the court shall exclude evidence offered by the defendant for the purpose of establishing an alibi or the insanity of the defendant. If the notice given by the defendant does not state, as particularly as is known to the defendant or the defendant's attorney, the name of a witness to be called in behalf of the defendant to establish a defense specified in [MCL 768.20 or MCL 768.20a], the court shall exclude the testimony of a witness which is offered by the defendant for the purpose of establishing that defense.

In *Travis*, the Michigan Supreme Court, in the factual context of a case involving the prosecution's notice of its intent to introduce testimony to rebut an alibi defense, held that the language in MCL 768.20(2) "or at such other time as the court may direct" provides the trial court with discretion "to fix the timeliness of notice in view of the circumstances." *Travis*, 443 Mich at 679. The *Travis* Court provided a list of factors, set forth in *United States v Myers*, 550 F2d 1036, 1043 (CA 5, 1977) that guide the trial court's exercise of its discretion and recognized that "[t]his test has been applied both to the prosecution and to the defense in cases involving failure to file any notice[.]" *Travis*, 443 Mich at 682. Specifically, the *Travis* Court held that "the *Myers* test provides an appropriate standard by which to judge the exercise of discretion vested in the trial court by our notice-of-alibi statute." *Id*. at 682-683. The factors from *Myers* were set forth by the *Travis* Court as follows:

> "In determining how to exercise its discretionary power to exclude the testimony of undisclosed witnesses . . . a district court should consider (1) the

amount of prejudice that resulted from the failure to disclose, (2) the reason for nondisclosure, (3) the extent to which the harm caused by nondisclosure was mitigated by subsequent events, (4) the weight of the properly admitted evidence supporting the defendant's guilt, and (5) other relevant factors arising out of the circumstances of the case." [*Id* at 692, quoting *Myers*, 550 F2d at 1043.]

In this case, defendant does not dispute that his disclosure of White was untimely. Instead, he contends that the trial court erred in excluding White's testimony as a penalty for the late disclosure. However, the application of the *Travis* factors in this case confirms that the trial court did not abuse its discretion in excluding White's testimony at trial.

The first factor concerns prejudice. *Travis*, 443 Mich at 682. In this case, the trial court found that the late notice would prejudice the prosecution. We agree with this conclusion. While the prosecution was aware of White before defendant moved to add him as a witness, the trial court correctly observed that the prosecution would require enough time to not only prepare to question White at trial, but to use cellular telephone records and surveillance from the area to confirm his location on May 2, 2017 when defendant claimed that the two met.

The second *Travis* factor concerns the reason for defendant's nondisclosure. *Id*. While defendant maintained that he only remembered his alibi after White called him and informed him that the prosecution contacted him about the case, the veracity of this claim is dubious. Specifically, defendant was arraigned on May 11, 2017, but he did not seek to add White as a potential alibi witness until five days before trial on September 21, 2017. Defendant claimed that he first received information about White, his uncle, as an important alibi witness in this case on September 21, 2017. Defendant also attempts to place the onus for his faulty memory on the police, suggesting that because he was not questioned by the police about the events giving rise to this appeal before his arrest, this contributed to his failure to remember his alibi defense. We are not persuaded that the trial court erred in determining that defendant's reason for the delay was not credible. Importantly, given that defendant and White share a close family relationship, it is not reasonable to conclude that defendant simply forgot about White for over four months during trial preparation. Given that defendant's reason for the delay is patently unpersuasive, this factor weighed in favor of excluding White's testimony. The third factor concerns whether subsequent events mitigated harm caused by nondisclosure. *Id*. In this case, there were no subsequent relevant events concerning White that would have mitigated harm caused by the nondisclosure. Therefore, this factor is not applicable.

The fourth factor concerns the weight of the evidence of defendant's guilt that was properly admitted at trial. *Id*. In this case, there was substantial evidence to support the jury's verdict. The victim provided detailed testimony about how defendant imprisoned her in his home and repeatedly violently assaulted and battered her. Defendant did not dispute that the victim spent the night before the assault at his home. The victim explained how defendant refused to allow her to leave the home and then repeatedly punched, kicked, and choked her, at one point putting on boxing gloves to avoid hurting himself as he beat her. The victim also testified about how defendant pointed a gun at her and evidence at trial confirmed that defendant owned a Glock handgun. Finally, several witnesses testified that they encountered the victim on the evening following the incident, and they observed that the victim suffered significant injuries and bruises to her body. Medical testimony and photographs confirmed that the victim had

substantial injuries to her body, and there was no other evidence to show how the victim could have obtained the injuries apart from the victim's explanation that defendant imprisoned and violently beat her over the course of four hours. Consequently, this factor weighed in favor of excluding White's testimony at trial. The fifth factor concerns any other relevant factor considering the circumstances of the case. *Id*. In this instance, the jury was apprised of defendant's alibi. Specifically, defendant testified that he met White at a garage where he kept his motorcycle at approximately 12:30 p.m. on May 2, 2017, which contradicted the victim's testimony. Accordingly, White would not have offered new evidence at trial. This weighed in favor of excluding White's testimony at trial.

Having reviewed the *Travis* factors, we conclude that the trial court did not abuse its discretion in excluding White's testimony. As noted earlier in this opinion, five days before trial the prosecution simply did not have sufficient time to prepare to question White and to ascertain his whereabouts on the date of the assault by way of surveillance and cellular telephone evidence. Moreover, defendant's reason for the delayed disclosure was patently unpersuasive. Put simply, defendant had ample time to reveal his alibi defense that involved his uncle and he did not do so. Further, the jury was presented with abundant evidence of defendant's guilt and was apprised of the alibi defense through defendant's trial testimony. Therefore, we are satisfied that the trial court's decision to exclude White's testimony did not fall "outside the range of reasonable and principled outcomes." *Yost*, 278 Mich App at 379.[1]

## II. MOTION FOR NEW TRIAL

Defendant also contends that the trial court erred in denying his motion for a new trial. We disagree.

We review de novo a trial court's decision to grant or deny a motion for a new trial. *People v Rao*, 491 Mich 271, 279; 815 NW2d 105 (2012). When the trial court's decision falls outside the range of reasonable and principled outcomes, this amounts to an abuse of discretion. *Id*. "A trial court may grant a motion for a new trial 'on any ground that would support appellate reversal of the conviction or because it believes that the verdict has resulted in a miscarriage of justice.' " *People v McEwan*, 214 Mich App 690, 697; 543 NW2d 367 (1995), quoting MCR 6.431(B).

---

[1] Our review of the trial court's ruling from the bench on September 22, 2017, a few days before trial, reflects that the trial court considered the prejudice to the prosecution, as well as defendant's delay for disclosing White as an alibi witness, before giving its ruling. While defendant faults the trial court for not weighing each factor from *Travis* in its initial decision precluding White from testifying, it is noteworthy that defense counsel did not argue the applicability of *Travis* in pleadings filed on September 21, 2017 requesting leave for White to testify at trial or during oral argument. Because the trial court rendered a well-reasoned decision from the bench consistent with the applicable law, we are not persuaded that its decision fell outside the range of reasonable and principled outcomes.

-4-

Defendant moved for a new trial asserting that the trial court erred in excluding White as a witness. As discussed earlier, the trial court did not abuse its discretion in denying defendant's motion to add White as an alibi witness. Therefore, the trial court's ruling did not constitute grounds for appellate reversal and it did not result in a miscarriage of justice. MCR 6.431(B). The trial court did not abuse its discretion in denying a new trial on this basis.

Defendant further argues that the trial court erred in refusing to allow White to testify after the prosecution cross-examined defendant about White and defendant's delay in raising the alibi defense. Defendant argues that this amounted to grounds for a new trial. This argument lacks merit.

In *People v Gray*, 466 Mich 44, 45-46; 642 NW2d 660 (2002), the Michigan Supreme Court rejected the defendant's argument that he was denied due process when, during the cross-examination of three alibi witnesses who testified at his trial, the prosecution attempted to impeach the witnesses by demonstrating that they had not come forward in advance of trial with the exculpatory information about the defendant. The *Gray* Court adopted the reasoning of this Court in *People v Phillips*, 217 Mich App 489; 552 NW2d 487 (1996) in concluding "that no special foundation is necessary before the trier of fact may be apprised that an alibi witness failed to come forward earlier with exculpatory information." *Gray*, 466 Mich at 46-47. The *Gray* Court went on to recognize that "[a] defendant in a criminal case has a right to present a defense, but that right is not cloaked with protection from vigorous cross-examination. A *tardily raised* or incredible claim of alibi may be challenged as part of the truth-seeking process that is a criminal trial." *Id*. at 48 (emphasis added.) Accordingly, once a defendant asserts an alibi defense, the prosecution may challenge it during cross-examination regarding "unexplained delays in its assertion or untruths in its substance." *Id*. Moreover, the jury or other factfinder may consider the credibility of an alibi witness, both regarding the substance of the alibi and any proffered reasons for not coming forward earlier with the alibi. *Id*., quoting *Phillips*, 217 Mich App at 496.

In this case, during direct examination, defendant testified that after the victim left his residence on the morning of May 2, 2017, he gathered his riding gear and left the residence at about noon. Defendant testified that he went to a garage where he kept his motorcycle and changed the motorcycle's oil. Defendant testified that he finished the oil change at about 1:00 p.m. According to defendant's testimony during direct examination, "[his] uncle met [defendant] at the bike garage." After changing the oil, defendant went on a motorcycle ride. Although White did not testify at trial, defendant's testimony nevertheless "opened the door" to the alibi defense and the prosecution was free to cross-examine defendant about the delay in raising the defense and the overall weakness of the alibi. *Gray*, 466 Mich at 48. Contrary to defendant's argument on appeal, the prosecution's questions did not focus on why defendant failed to produce White at trial; instead, the cross-examination focused on defendant's delay in raising the defense. As noted earlier, "[a] *tardily raised* or incredible claim of alibi may be challenged as part of the truth-seeking process that is a criminal trial." *Id*. at 48 (emphasis added). Accordingly, the trial court did not abuse its discretion in denying defendant's request at trial to add White as a witness or in holding that the prosecution's cross-examination of defendant did not warrant a new trial. See *McEwan*, 214 Mich App at 697.

Defendant cites language from *People v Holland*, 179 Mich App 184, 189; 445 NW2d 206 (1989), to support his argument that the prosecution should not have asked questions about White because White did not testify at trial. In *Holland*, the defendant argued that because he did not present an alibi defense at trial, the trial court erred in reading to the jury the defendant's notice of alibi and permitting the prosecution to comment during closing arguments regarding the defendant's failure to call two alibi witnesses. However, at trial, the defendant testified consistently with his notice of alibi. *Id*. at 189-190. In *Holland*, this Court explained, in pertinent part as follows:

> [P]rior to defendant's actually presenting an alibi at trial, the prosecution and trial court may not comment on defendant's filing of an alibi notice or failure to produce corroborating witnesses. However, once the defendant presents such a defense, the prosecution is permitted to attack the alibi by commenting on the weakness of the alibi testimony . . . . Moreover, where the defendant presents an alibi defense at trial, the prosecutor's questions and arguments regarding the defendant's failure to produce the alibi witnesses listed in the notice of alibi is permissible to highlight the weakness of the defense. [*Id*. at 191 (citations omitted).]

Defendant's argument that the prosecution in this case could not comment on his failure to produce White because White was precluded from testifying at trial is without merit. In this case, as discussed earlier in this opinion, the prosecution's cross-examination did not focus on White's absence from trial and why defendant did not produce him as an alibi witness, but rather focused on why defendant waited until days before trial commenced to disclose White as a witness. Given that defendant testified regarding his alibi during his direct examination, we are satisfied that that the prosecution's line of questioning seeking to undermine defendant's alibi and question the delay in raising the defense was permissible. See *Gray*, 466 Mich at 48.

### III. SUFFICIENCY OF THE EVIDENCE

Next, defendant argues that there was insufficient evidence to support his conviction of unlawful imprisonment. We disagree.

We review de novo a defendant's challenge to the sufficiency of the evidence. *People v Henderson*, 306 Mich App 1, 8; 854 NW2d 234 (2014). "[T]his Court analyzes the evidence presented in the light most favorable to the prosecution to determine whether any rational trier of fact could have found that the essential elements of the crime charged were proven beyond a reasonable doubt." *People v Lundy*, 467 Mich 254, 257; 650 NW2d 332 (2002). "[C]ircumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v McKinney*, 258 Mich App 157, 165; 670 NW2d 254 (2003) (quotation marks and citation omitted; alteration in original).

MCL 750.349b proscribes unlawful imprisonment. In this case, the trial court instructed the jury on the elements of unlawful imprisonment in accord with the following criminal jury instruction:

-6-

[1] First, that the defendant knowingly restrained another person. "Restrain" means to forcibly restrict a person's movements or to forcibly confine the person so as to interfere with that person's liberty without that person's consent or without lawful authority. The restraint does not have to exist for any particular length of time and may be related or incidental to the commission of other criminal acts.

[2] Second, the defendant did so under one or more of the following circumstances:

* * *

(a) The person is restrained by means of a weapon or dangerous instrument.

(b) The restrained person was secretly confined, which means to keep the confinement or location of the restrained person a secret.

(c) The person was restrained to facilitate the commission of another felony or to facilitate flight after commission of another felony. [M Crim JI 19.8 (footnote omitted).]

In this case, the trial court, in its instructions to the jury, included all three alternatives for restraint. The trial court also defined "secret confinement" consistently with MCL 750.349b(3)(b). On appeal, defendant contends that there was insufficient evidence to prove the second element of the offense of unlawful imprisonment. This argument lacks merit.

The record evidence, viewed in a light most favorable to the prosecution, amply supported the elements of unlawful imprisonment. First, there was evidence to prove beyond a reasonable doubt that defendant forcibly restricted the victim's movements or forcibly confined the victim in a manner that interfered with the victim's liberty without the victim's consent and without lawful authority. Specifically, the victim testified that defendant refused to allow her to leave his residence and that he forced her into a bedroom and refused to allow her to leave for four hours. The victim testified that she was on the bed in defendant's bedroom and that she attempted to leave several times. The victim testified that when she attempted to stand up to leave the bedroom, defendant pushed her back down, punched her, or kicked her. This testimony was sufficient evidence to prove the first element of unlawful imprisonment, i.e., restraint, beyond a reasonable doubt.

In addition, there was sufficient evidence to prove that defendant used a gun to restrain the victim. The victim testified that while she was confined in the bedroom defendant pointed a gun at her and told her that he could kill her. The jury could have concluded that defendant used the gun to facilitate the confinement by using it to create fear in the victim to prevent her from attempting to escape. This was sufficient to show that the gun was used as a means to confine and restrain the victim. Alternatively, there was sufficient evidence to prove that defendant secretly confined the restrained victim. The victim testified that while she was confined in the bedroom, defendant retrieved her cellular telephone and forced her to unlock the phone. The victim testified that defendant examined the contents of the cell phone and then twice threw it

-7-

against the wall and broke it. The jury could have concluded beyond a reasonable doubt that defendant broke the cell phone to prevent the victim from contacting anyone and informing them of her location in an effort to conceal the victim's location. See MCL 750.349b(3)(b). Although the jury acquitted defendant of interference with a communication device, MCL 750.540(1), a jury is free to reach inconsistent verdicts. *People v Putman*, 309 Mich App 240, 251; 870 NW2d 593 (2015).

There was also sufficient evidence to allow the jury to conclude beyond a reasonable doubt that defendant restrained the victim to facilitate the commission of another felony or to facilitate flight after commission of another felony. In this case, the jury convicted defendant of felonious assault using a gun, MCL 750.82(1). The victim testified that defendant pointed a gun at her while she was confined in the bedroom. The jury could have concluded beyond a reasonable doubt that defendant restrained the victim in the bedroom to facilitate the commission of the felonious assault. Furthermore, the victim testified that defendant assaulted and battered her in the living room before confining her in the bedroom. Eventually, after four hours of brutally assaulting her, defendant only let the victim go when she promised that she would not contact the police and she told him that she suspected that he had broken her jaw. This evidence would have allowed the jury to conclude beyond a reasonable doubt that defendant confined the victim to facilitate flight or to avoid the police.

In sum, there was sufficient evidence to convict defendant of unlawful imprisonment under any of the three theories of restraint set forth in MCL 750.349b(1).

## IV. SENTENCING

Finally, defendant argues that the trial court erred in assessing points to offense variables (OV) 10 and 7. We disagree.

"[T]he proper interpretation and application of the legislative sentencing guidelines . . . are legal questions that this Court reviews de novo." *People v Morson*, 471 Mich 248, 255; 685 NW2d 203 (2004). In *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013), the Michigan Supreme Court stated:

> Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo. [(footnotes omitted).]

MCL 777.40[2] governs the scoring of OV 10, exploitation of a vulnerable victim, and it provides in relevant part as follows:

---

[2] While MCL 777.40 was amended by 2018 PA 652, effective March 28, 2019, the amendments are not pertinent to our analysis.

(1) Offense variable 10 is exploitation of a vulnerable victim. Score offense variable 10 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:

* * *

(c) The offender exploited a victim by his or her difference in size or strength, or both, or exploited a victim who was intoxicated, under the influence of drugs, asleep, or unconscious.................................................................5 points

In this case, the trial court concluded that the assessment of five points for OV 10 was warranted because defendant exploited the victim by using his physical size and strength. MCL 777.40(1)(c). We agree with the trial court's determination and it is supported by the record. For example, the victim testified that defendant physically forced her into a bedroom and then refused to allow her to leave. Every time the victim got up to try to escape, defendant punched or kicked her and physically forced her back on the bed, at one point lifting her up into the air with one hand around her throat. This evidence amply demonstrated that defendant exploited his strength advantage over the victim to force her to remain in the bedroom against her will. Under such circumstances, the trial court correctly assessed five points for OV 10.

Turning to OV 7,[3] MCL 777.37 governs the scoring of this OV addressing aggravated physical abuse, and, in relevant part, directs a trial court to assess 50 points when "[a] victim was treated with sadism, torture, excessive brutality, or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." MCL 777.37(1)(a).

The trial court properly assessed 50 points for OV 7 because the evidence showed that defendant treated the victim with "excessive brutality, or similarly egregious conduct designed to substantially increase the fear and anxiety [the] victim suffered during the offense[.]" MCL 777.37(1)(a). Because the plain language of MCL 777.37(1)(a) specifies that the brutality must be excessive for 50 points to be assessed, the trial court was only permitted to assess 50 points if it found that defendant's behavior "exceeded the brutality that normally encompasses" unlawful imprisonment. See *People v McFarlane*, 325 Mich App 507, 533; ___ NW2d ___ (2018) (observing in the context of a first-degree child abuse conviction that 50 points could be assessed pursuant to MCL 777.37(1)(a) only if the "abuse involved in this case exceeded the brutality that normally encompasses first-degree child abuse.") Similarly, 50 points are properly assessed pursuant to OV 7 "for conduct that was intended to make a victim's fear or anxiety greater by a considerable amount." *Hardy*, 494 Mich at 441. As the *Hardy* Court instructed:

[A]ll relevant evidence should be closely examined to determine whether the defendant engaged in conduct beyond the minimum necessary to commit the

---

[3] Because defendant did not object to the trial court's assessment of 50 points for OV 7, we review his scoring challenge for "plain error affecting substantial rights." *People v Chelmicki*, 305 Mich App 58, 69; 850 NW2d 612 (2014).

crime, and whether it is more probable than not that such conduct was intended to make the victim's fear or anxiety increase by a considerable amount. [*Id*. at 443.]

The crime of unlawful imprisonment is committed if the defendant "knowingly restrains" another person under one of the following circumstances: (1) with a weapon or dangerous instrument or (2) under circumstances involving secret confinement or (3) to facilitate the commission of another felony or to facilitate flight after the commission of another felony. MCL 750.349b(1)(a), (b), (c).

The victim testified at trial that defendant restrained her in a bedroom for four hours during this brutal and unrelenting assault. During that time, according to the victim's testimony, defendant repeatedly and viciously punched and kicked her all over her body. The victim testified that defendant used handcuffs to repeatedly punch her on her arms and legs. The victim further testified that defendant put on a boxing glove and punched her after he hurt his bare hand punching her. Defendant called the victim a "whore[,]" accused her of infidelity and pointed a gun at her, informing her that he had killed before and that he could kill again. In an effort to torment her, defendant choked the victim, inquiring if she saw stars which meant that she would pass out. Defendant also held a knife to the victim's head.

The evidence further showed that defendant inflicted bruises all over the victim's face and significant bruises over her entire body. A retired police officer testified that on the evening following the assault, the victim had multiple injuries on her legs, arms, and neck; her right eye was black and blue; and she had swollen lips. A nurse at the emergency room testified that she remembered the victim because of the severity of her bruising. One of the victim's friends visited the victim on the evening of the assault and testified that the victim had "bruises everywhere" and that she had "never seen anything like that in my life." Moreover, a seasoned police officer testified that the photographs of the victim's injuries were the worst that he had seen during his 20 years of experience in law enforcement. At trial, the prosecution introduced photographs of the victim's injuries and a video recording showing the injuries on the inside of the victim's mouth, and the victim testified that defendant inflicted the injuries upon her. This treatment by defendant of the victim undoubtedly exceeded the brutality that would normally encompass the crime of unlawful imprisonment. *McFarlane*, 325 Mich App at 507. Similarly, the record reflects that defendant engaged in conduct "beyond the minimum necessary to commit" the crime of unlawful imprisonment, and that it was more probable than not that the defendant's conduct was intended to terrorize the victim and increase her fear and anxiety "by a considerable amount." *Hardy*, 494 Mich at 443. On this record, the trial court's assessment of 50 points for OV 7 was certainly appropriate.

Affirmed.

/s/ Mark T. Boonstra
/s/ Patrick M. Meter
/s/ Karen M. Fort Hood

-10-