*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

UNPUBLISHED
March 19, 2020

v

No. 345972
Macomb Circuit Court
LC No. 2016-002055-FC

DONNA JEAN MORENO,

        Defendant-Appellant.

Before: M. J. KELLY, P.J., and FORT HOOD and BORRELLO, JJ.

PER CURIAM.

Defendant appeals by delayed leave granted[1] her jury-trial conviction of first-degree child abuse, MCL 750.136b(2), for which defendant was sentenced to 18 to 60 months' imprisonment. We affirm.

In March 2016, defendant and a friend brought defendant's 10-month-old daughter, XRM, to an urgent care facility to have XRM's eyes examined. The examination, as well as subsequent hospitalizations, brought to light that XRM suffered from interstitial keratitis, or chronic inflammation of the eyes, along with fractures in her legs, right wrist, and skull. During the police investigation that followed, defendant offered inconsistent and unsatisfactory explanations for the child's injuries. Defendant was ultimately charged with first-degree child abuse, and convicted and sentenced as indicated above. On appeal, defendant argues that the prosecution presented insufficient evidence to support her conviction, that the trial court erred in denying a request for a mistrial over improper prosecutorial questioning, and that the prosecutor made multiple errors that prejudiced defendant.

## I. SUFFICIENCY OF THE EVIDENCE

---

[1] *People v Moreno*, unpublished order of the Court of Appeals, entered March 20, 2019 (Docket No. 345972).

Defendant first asserts that the prosecution presented insufficient evidence to prove that she caused XRM's injuries or acted with the requisite intent to do so. We disagree.

A challenge to the sufficiency of the evidence is reviewed de novo. *People v Harrison*, 283 Mich App 374, 377-378; 768 NW2d 98 (2009). This Court must review the evidence "in the light most favorable to the prosecution in order to determine whether a rational trier of fact could have found that the prosecution proved the elements of the crime beyond a reasonable doubt." *People v Levigne*, 297 Mich App 278, 281-282; 823 NW2d 429 (2012). "All conflicts in the evidence must be resolved in favor of the prosecution, and circumstantial evidence and all reasonable inferences drawn therefrom can constitute satisfactory proof of the crime." *People v Solloway*, 316 Mich App 174, 180-181; 891 NW2d 255 (2016) (citations omitted). It is the role of the trier of fact to determine the weight of the evidence and evaluate the credibility of witnesses. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

MCL 750.136b(2) provides, in relevant part, "A person is guilty of child abuse in the first degree if the person knowingly or intentionally causes serious physical or serious mental harm to a child." Thus, "[t]he elements of first-degree child abuse are (1) the person, (2) knowingly or intentionally, (3) causes serious physical or mental harm to a child." *People v Gould*, 225 Mich App 79, 87; 570 NW2d 140 (1997). The prosecution must establish "not only that defendant intended to commit the act [that caused harm to the child], but also that defendant intended to cause serious physical harm or knew that serious physical harm would be caused by her act." *People v Maynor*, 470 Mich 289, 291; 683 NW2d 565 (2004).

First, with respect to causation, police investigators testified that defendant told them that XRM was constantly—almost exclusively—in defendant's care. Investigators further testified that defendant admitted to acting forcibly with XRM out of stress and frustration. Defendant's housemate described hearing a "thud" while wearing noise-cancelling headphones and finding defendant holding XRM with a look of concerned astonishment on her face. The housemate later observed that XRM's "eye was clouded, as if she was going blind." Defendant delayed obtaining medical services for XRM, and various witnesses who observed that XRM had swelling, bruising, and peculiarities about the appearance of her eyes reported that defendant offered unconvincing explanations for those conditions. Defendant later admitted that she lied to the police regarding where XRM was injured, and provided the police only false information about where she and XRM actually lived. We conclude that the evidence that defendant was XRM's exclusive caretaker during the time in which XRM would have sustained her injuries, that defendant's housemate heard a "thud" and then noticed a look of alarm on defendant, that defendant failed to obtain timely medical attention for XRM, that defendant offered various unconvincing and inconsistent explanations for XRM's injuries, and that defendant was dishonest with the police about the location of her and XRM's place of residence, is sufficient to support a reasonable inference that defendant was responsible for XRM's injuries.

Next, concerning the issue of intent, "[t]his Court has consistently observed that because of the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient." *People v Anderson*, 322 Mich App 622, 633; 912 NW2d 607 (2018) (quotation marks and citation omitted). A defendant's intent to seriously injure a victim may be inferred from the severity of a victim's injuries. *People v Mills*, 450 Mich 61, 71; 537 NW2d 909, mod on other grounds 450 Mich 1212 (1995). "It is for the trier of fact, not the appellate court, to determine what inferences

may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Henry*, 315 Mich App 130, 135; 889 NW2d 1 (2016) (quotation marks and citation omitted). In this case, two medical experts opined that the severity of XRM's injuries fairly ruled out routine childhood accidents and suggested nonaccidental trauma. That medical testimony, considered along with the indications that defendant failed to seek immediate medical care in spite of XRM's clear and obvious injuries, was sufficient to persuade a reasonable juror that defendant either intended to seriously harm XRM or at least knew that serious harm would result from her actions.

## II. MOTION FOR A MISTRIAL

Defendant next argues that the trial court erred when it denied her motion for a mistrial on the basis of the prosecutor having asked defendant on cross-examination about contacting sequestered witnesses. Defendant contends that the prosecutor's questioning improperly insinuated that defendant engaged in witness tampering, and that the insinuation prejudiced defendant. We disagree.

"The trial court's grant or denial of a mistrial will not be reversed on appeal in the absence of an abuse of discretion." *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *People v Strickland*, 293 Mich App 393, 397; 810 NW2d 660 (2011) (quotation marks and citation omitted). "A mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant, and impairs his ability to get a fair trial." *Haywood*, 209 Mich App at 228 (citations omitted). That remedy is appropriate only "when the prejudicial effect of the error cannot be removed in any other way." *People v Horn*, 279 Mich App 31, 36; 755 NW2d 212 (2008). "Jurors are presumed to follow instructions, and instructions are presumed to cure most errors." *People v Petri*, 279 Mich App 407, 414; 760 NW2d 882 (2008).

In this case, before the jury entered the courtroom on the last day of trial, the prosecutor informed the trial court that, on that morning, the friend whom defendant asked to lie to the police about her living arrangements, and who finished testifying on the previous day, contacted the prosecution and reported that defendant "had contacted her." The prosecutor explained that the contact "wasn't anything egregious in nature, but it had to do with facts of the case . . . ." The prosecutor asked the trial court to instruct defendant not to communicate with the other witnesses in the case. Defense counsel responded that he was unaware of any no-contact provisions or other such constraints, and, with the trial court's permission, defense counsel read the text message defendant sent to her friend into the record: "I just want you to know that I was never mad at you for telling the truth, it was wrong of me to ask, I'm sorry, the truth was going to come out anyways." The trial court then ordered defendant to not contact any of the witnesses or other persons involved in the case.

Subsequently, the prosecutor asked defendant on cross-examination: "Would you agree that when there's a trial and the judge orders sequestration of testifying witnesses in the case, it's not a good idea to be contacting them[?]" Defense counsel objected, and the jury was excused. Defense counsel requested a mistrial on the ground that the trial court "ordered" the prosecutor to "not do what he just did," and because the jury would "be left with the idea or the impression that there's some idea of witness tampering or so on, that is obviously going to be left unexplained

. . . ." The prosecutor responded that the trial court never ruled on whether defendant could be questioned about her recent contact with her friend, and that his question was relevant and probative. The trial court denied the motion for a mistrial, but stated that the prosecutor could not further question defendant regarding defendant's contact with the witness, and that it would instruct the jury at the close of trial that the lawyers' statements were not to be considered. At the close of proofs, the trial court instructed the jury as promised:

> The lawyers' statements and arguments are not evidence. They're only meant to help you understand the evidence and each side's legal theories. You should only accept things the lawyers say that are supported by the evidence or by your own common sense and general knowledge. The lawyers' questions to the witnesses and my questions are also not evidence. You should consider these questions only as they give meaning to the witnesses['] answers.

In support of her contention that the trial court erred when it denied the motion for a mistrial, defendant relies on *People v Long*, 144 Mich 585, 585-586; 108 NW 91 (1906), wherein our Supreme Court reversed a conviction because the prosecution introduced testimony of attempted witness tampering where there was no evidence that the defendant was involved with the attempted tampering. Defendant also relies on *People v Page*, 41 Mich App 99, 101-102; 199 NW2d 669 (1972), wherein this Court held that a law enforcement officer's unresponsive and irrelevant testimony that the defendant was associated with drug trafficking provided a sufficient basis to grant the defendant's motion for a mistrial because police officers normally command the respect of the jury, the association of the defendant with drug trafficking was inflammatory, and there was a "less than strong case against the defendant." Unlike this case, both cases involved erroneous trial testimony. In this case, however, no evidence ever reached the jury regarding defendant's text message to her friend, and because defendant never answered the prosecutor's question about contacts with sequestered witnesses, there was no actual evidence of witness tampering for the jury to consider.

Further, as noted, the trial court instructed the jury that the lawyers' statements, arguments, and questions were not evidence. See *People v Callon*, 256 Mich App 312, 330-331; 662 NW2d 501 (2003) (holding that a trial court's instruction that the attorney's statements were not evidence dispelled any prejudice arising from the prosecutor's improper comment). Although defendant contends that the trial court's general instruction did not cure the prejudice caused by the insinuation of jury tampering that underlay the challenged question from the prosecutor, because that question concerned only a general proposition regarding the propriety of contacting sequestered witnesses, and because it went unanswered, defendant fails to overcome the presumption that any error was cured by the instruction. See *Petri*, 279 Mich App at 414.

### III. PROSECUTORIAL ERROR[2]

---

[2] This Court has acknowledged that the term "prosecutorial misconduct" is commonly used in reference to any allegation of impropriety on the part of a prosecuting attorney, but that claims of error stemming from allegations of the prosecuting attorney's inadvertence are "better and more

Defendant lastly contends that the prosecutor improperly denigrated the defense through the testimony of its expert witness, that the prosecutor improperly suggested that defense counsel mischaracterized the law, and that the prosecutor misrepresented the facts in evidence. Defendant contends that all of these alleged errors were prejudicial. We disagree.

To preserve a claim of prosecutorial error, "a defendant must have timely and specifically objected below, unless an objection could not have cured the error." *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011). "[A] defendant must contemporaneously object and request a curative instruction." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). In this case, defense counsel objected at the prosecution's alleged mischaracterization of the law, the trial court sustained the objection, and counsel asked for no additional remedy. None of the other instances of alleged prosecutorial error of which defendant now makes issue drew any objection. For these reasons, defendant's appellate claims of prosecutorial error are unpreserved.

"Generally, a claim of prosecutorial misconduct is a constitutional issue reviewed de novo." *People v Abraham*, 256 Mich App 265, 272; 662 NW2d 836 (2003). However, unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting substantial rights. *People v Vandenberg*, 307 Mich App 57, 61; 859 NW2d 229 (2014). To avoid forfeiture under the plain-error rule, the defendant must establish that an error occurred, that it was plain, and that it affected substantial rights. *People v Buie*, 285 Mich App 401, 407; 775 NW2d 817 (2009). "The third prong requires a showing of prejudice, which occurs when the error affected the outcome of the lower court proceedings." *People v Putman*, 309 Mich App 240, 243; 870 NW2d 593 (2015). The reviewing court should reverse only when the defendant is actually innocent or the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

"A prosecutor has committed misconduct if the prosecutor abandoned his or her responsibility to seek justice and, in doing so, denied the defendant a fair and impartial trial." *People v Lane*, 308 Mich App 38, 62; 862 NW2d 446 (2014). This Court considers claims of prosecutorial misconduct on a case-by-case basis, and the prosecutor's remarks must be considered in context. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). "Prosecutors are typically afforded great latitude regarding their arguments and conduct at trial," and are "generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008). However, it is improper for a prosecutor to denigrate a defendant—or defense counsel—with prejudicial remarks; the focus must remain on the evidence, not on the personalities involved. See *People v Bahoda*, 448 Mich 261, 283; 531 NW2d 659 (1995); *People v Phillips*, 217 Mich App 489, 497-498; 552 NW2d 487 (1996).

Defendant characterizes some of what the prosecution's medical expert stated on cross-examination as improper denigration of the defense. In particular, defense counsel asked the expert

_____

fairly presented as claims of 'prosecutorial error,' with only the most extreme cases rising to the level of 'prosecutorial misconduct.'" *People v Cooper*, 309 Mich App 74, 88; 867 NW2d 452 (2015).

if he was familiar with "the Journal of Peri, Perinatology," and the expert replied that he would "have to see what you're saying to understand what you're saying." When defense counsel summarized one of the findings provided in that journal and asked the expert if he agreed, the expert replied, "I mean you can't even say the name right. So, I don't know if you're interpreting what they're writing." Defense counsel approached the expert with what he offered as a medical text, and the expert clarified that counsel did not provide "the actual book," but instead a "kind of summary pulled out of a web page describing the book." Additionally, when discussing why XRM's bone fractures were not consistent with a diagnosis of congenital syphilis, the expert replied that defense counsel could "Google all you want" but would not find a "buckle fracture" or a "brain bruise" attributed to congenital syphilis.

We discern no error stemming from the cross-examination of the prosecution's expert that is attributable to the prosecution. Fatal to defendant's argument is that defendant neither cites authority for the proposition that testimony elicited by defense counsel might be characterized as an impropriety attributable to the prosecutor, nor otherwise explains how those exchanges support any claim of prosecutorial error. A party " 'may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority.' " *Henry*, 315 Mich App at 148, quoting *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998).

Defendant additionally asserts that the prosecutor denigrated the defense by stating that the theories of defense were a "waste of time." This argument is without merit. The prosecutor asked his expert during redirect examination whether defense counsel's questioning about syphilis was a "waste of time," and the expert responded affirmatively, noting that there was no indication that XRM had syphilis. The prosecutor then asked the expert if he would feel differently had a witness testified that XRM had syphilis, and the expert answered in the negative. During his closing argument, the prosecutor stated that, even though syphilis had been discussed at trial "so much more than the crushed bones, the broken skull and the brain bleed," the expert testified that even if XRM had been diagnosed with syphilis his conclusions would be the same. The prosecutor thus encouraged the jury to join the expert in deeming the discussion regarding syphilis "a waste of everybody's time." The prosecutor resorted to that characterization only after establishing that there was no indication that XRM's injuries were attributable to a theoretical diagnosis of syphilis, and that such a diagnosis would not have altered the expert's conclusions regarding XRM's injuries. And we note, "[t]he prosecution has wide latitude in arguing the facts and reasonable inferences, and need not confine argument to the blandest possible terms." *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007).

Defendant cites in support of her argument decisions by this Court wherein this Court held that comments by prosecutors attacking the veracity of defense attorneys' arguments were improper, but in those cases the prosecutor actually suggested that the defense attorney was either attempting to deceive the jury, *People v Dalessandro*, 165 Mich App 569, 579-580; 419 NW2d 609 (1988), or that the defense attorney was attempting to distract the jury from the truth, *People v Watson*, 245 Mich App 572, 592-593; 629 NW2d 411 (2001). Moreover, in a related context, this Court has held that referring to an argument by the defense attorney as a "red herring" was not improper denigration of the defense, "but rather a fair argument regarding what the jury should believe." *People v Blevins*, 314 Mich App 339, 356; 886 NW2d 456 (2016). Thus, in this case, although perhaps the prosecutor's characterization of the value of the testimony regarding syphilis

could have been more diplomatic, it accurately reflected the expert's testimony and made no insinuations about the intent of the defense. We therefore discern no error.[3]

Defendant next asserts that the prosecutor erred by arguing during closing arguments that defendant's trial counsel mischaracterized the law. During closing argument, defense counsel explained his personal approach of "14 steps in order to get to proof beyond a reasonable doubt . . . ." The prosecutor argued to the jury in rebuttal that there were "not . . . 14 steps to convicting . . . because it's not the law," and instead referred to the 14-step approach as "a mischaracterization" of the law. Defense counsel objected, and the trial court sustained the objection and stated it would instruct the jury on the law.[4] Defendant offers no rationale concerning how the challenged remarks resulted in prejudice, given that the court promptly sustained the objection and stated that it would instruct the jury on the law, and given that the prosecutor thereafter provided no further argument regarding the "14 steps" referred to by defense counsel. Again, a party " 'may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority.' " *Henry*, 315 Mich App at 148, quoting *Kelly*, 231 Mich App at 640-641.

Defendant lastly contends that the prosecutor mischaracterized the evidence during closing arguments, particularly with respect to characterizing defendant as a liar and with respect to characterizing XRM as having been found "screaming in agony." During trial, defendant admitted that she lied to the police regarding XRM being injured on a patio chair at her friend's home, and about herself and XRM living at that friend's home. Defendant further admitted that she sent the police to two homes where she did not live, and that she never provided police with the address of the home where she did live with XRM. Defendant's friend also testified that defendant asked her falsely to tell the police that defendant lived at the friend's home. During closing arguments, the prosecutor argued that there was "an underlying framework of lie after lie after lie" pertaining to defendant, and that defendant "lied to the police and doctors about where she lived," and "had her friends lie to the police." Defendant contends that, in reality, the evidence only indicates that defendant lied once, and that the misinformation pertaining to where defendant was living also pertained to where XRM purportedly fell from a chair. However, as noted, defendant admitted to repeatedly lying to the police about where she lived, as well as about XRM's being injured by falling off a chair at her friend's home, and defendant also asked her friend to lie. The record thus

---

[3] We note defendant's related argument that the prosecutor's characterizations of defendant's defenses as "excuses," or as "throwing spaghetti on the wall to see what sticks," denigrated defendant's trial counsel. However, the prosecutor's arguments did not pertain to any specific theory put forward by defense counsel, but rather to the "whole laundry list of things" that defendant herself indicated were the cause of XRM's injuries, which included "brittle bone, falls off of [a] bed," or a "fall while walking." A prosecutor is generally "permitted to argue from the facts that defendant or defendant's witnesses were unworthy of belief," *Dobek*, 274 Mich at 67, and we see no error in the prosecutor having argued that defendant's inconsistent explanations for XRM's injuries lacked credibility for that reason.

[4] Notably, defense counsel did not ask the trial court for a curative instruction or any other additional remedy.

does not support defendant's assertion that the evidence permitted the inference that defendant lied only once in connection with the investigation. Accordingly, there is no merit to defendant's assertion that the prosecution mischaracterized the evidence for having argued that defendant was repeatedly untruthful.

With respect to the characterization of XRM having screamed in agony, as briefly noted above, defendant's housemate testified that he heard a thud from his room in the basement of defendant's home and, after encountering defendant holding XRM and appearing to be in some sort of shock, the housemate became concerned enough to hold XRM because "she was crying and she needed to be consoled." Further, the prosecution's expert explained that XRM's injuries to her left leg and skull would normally result in "a painful cry" that was distinct from a cry resulting from hunger. During closing arguments, the prosecutor referred to the housemate having heard a thud, then to the expert's testimony, and noted "the pain that that baby was screaming in agony over . . . it's crying and screaming that's different than when a baby's hungry." Again, prosecutors are generally afforded great latitude regarding their arguments," and "are generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *Unger*, 278 Mich App at 236. Although defendant's housemate did not testify that XRM was crying specifically in "agony," the prosecutor argued a reasonable inference that XRM was crying in pain on the basis of the expert's testimony regarding XRM's injuries. We disagree with defendant that this was a mischaracterization of the evidence.[5]

Affirmed.

/s/ Michael J. Kelly
/s/ Karen M. Fort Hood
/s/ Stephen L. Borrello

---

[5] We also note that any error in this regard would have been cured by the trial court's instruction to the jury that the lawyers' statements, arguments, and questions were not evidence. See *Petri*, 279 Mich App at 414; *Callon*, 256 Mich App at 330-331.